[No. 18496.   Department One.   October 1, 1924.]

YAKIMA VALLEY BANK, *Appellant*, v. LAURA E.
CHURCHILL, *Respondent*.[1]

BILLS AND NOTES (141)—BONA FIDE PURCHASERS—GOOD FAITH—
NOTICE OF INFIRMITIES—EVIDENCE—SUFFICIENCY. The bad faith or
bona fides of a bank in taking a check from a trust company, is
a question for the jury, and a verdict against it is sustained by
the evidence, where it appears that the trust company had a private
agreement with the bank to put the trust company's clearings
through the clearing house for it, the exact nature of which is not
disclosed; that, after notice of insolvency of the trust company, the
bank demanded and received from the trust company checks and
securities amounting to more than three thousand dollars in excess
of the deficit due it for clearings of that day; and that the same
included the check in question, which had been received by the
trust company the same day, after notice of its insolvency, and
under the usual written condition that it was received for collection
only and did not become the property of the trust company.

Appeal from a judgment of the superior court for
Yakima county, Nichoson, J., entered October 25, 1923,
upon the verdict of a jury rendered in favor of the de-
fendant, in an action on a check. Affirmed.

*Hugo F. Luhman* and *Holden, Shumate & Cheney,*
for appellant.

*H. J. Snively,* for respondent.

TOLMAN, J.—This action was instituted by appellant,
as plaintiff, to recover upon a dishonored check. The
case was tried to a jury which returned a verdict in
favor of the defendant. From a judgment of dismissal
based upon the verdict, the plaintiff has appealed.

The facts, in a general way, are about as follows:

The Central Bank & Trust Company had for some
years been doing a banking business in the city of
Yakima. It was not a member of the local clearing

[1]Reported 228 Pac. 1009.

house, but by some private arrangement between them it cleared through the Yakima Valley Bank. That is, the trust company, as we will call it, took each day the clearing house items which it received to the bank, and the bank presented these items to the clearing house and itself received credit therefor. At the same time, the clearing house items drawn on the trust company were charged to the bank, and settlement was made between the bank and trust company on the basis of these credits and debits. On the morning of January 26, 1922, the trust company's draft on an out of town correspondent for $50,000 was known to have been dishonored. The state bank examiner investigated and immediately informed all of the banks of Yakima that unless they came to its assistance he would close the trust company's doors. A meeting of the representatives of the several banks was at once held, at which meeting appellant was represented by its cashier. Apparently the affairs of the trust company were thoroughly canvassed, but the record does not show that any plan was evolved or put into operation to save it. The bank examiner closed its doors on the following day. In the meantime, at about 2:00 o'clock p. m. of January 26, and after the meeting of the Yakima bankers above referred to had been held, and when it was known to the officers of the trust company that no plan had so far been proposed or agreed to which would enable it to continue in business, the respondent went to the trust company for the purpose of transferring her deposit account from a bank at Prosser to the trust company, and was, through an officer of the trust company, directed to do so by the drawing and depositing with the trust company of the check now in issue. This was done and the respondent received $4.39 in cash, and credit in a pass

book for $990, in which pass book on its first page is plainly printed the following:

"This bank in receiving out of town checks and other collections acts only as your agent, and does not assume any responsibility beyond due diligence on its part the same as on its own paper.

"Checks on this bank will be credited conditionally. If not found good at the close of business on the day of deposit, they will be charged back to depositor and the latter notified. Checks on other banks will be carried over for presentation the following day. If any check, draft, note or other item is dishonored, or if there is any delinquency on the part of the collecting agent, amount will be charged back to depositor's account, and check, draft, note or other item delivered to depositor."

Almost immediately following this transaction, and about 2:30 in the afternoon, the cashier of the bank went to the trust company with the information that the clearings of that day had been against the trust company, and that there was a deficit to be covered. Thereupon an employee of the trust company went about to the various cages, gathered up all the checks then in the possession of the trust company, together with a considerable sum in currency, and turned the whole over to the cashier of the bank. He states the matter as follows:

"They had more items against us in the clearings than we had against other clearing house banks, and in order to cover any overdrafts on the Yakima Valley Bank books we went around to all of the cages and picked up all that would be clearing house items, and I think twenty-two hundred dollars in currency that we deposited with the Yakima Valley Bank to cover any deficit."

He further states that the cashier of the bank demanded, as necessary to meet the clearing house deficit,

$12,951.90, and that the items turned over to him aggregated $14,802.71, which left a balance in favor of the trust company of $3,136.53, which he states to be correct according to the books of the trust company; and a statement from the books of the bank was introduced in evidence, and is shown in the record, which likewise indicates that, when the trust company was closed, it had a credit on the books of the bank of $3,142.36, substantially the same sum.

Respondent defended upon the ground that, at the time she made the deposit, the trust company was insolvent, and known by its officers to be so, and that the bank, with knowledge of that insolvency, and with the intention of obtaining an unlawful preference, took and received the check. In other words, that it was not a *bona fide* purchaser for value.

The errors assigned are that the court erred in denying appellant's motion for a directed verdict, its motion for judgment notwithstanding the verdict, and its motion for a new trial. Considerable space is given in appellant's brief to the question of the duty of the bank to clear the paper of the trust company, and its right to reimburse itself out of any assets of the trust company coming into its hands, so long as it acted in good faith. We do not find it necessary to discuss this question, first, because these institutions were not acting under clearing house rules, but by virtue of a private arrangement the details of which are not sufficiently shown by the record to enable us to say with any certainty just what the bank's duties and rights were; and in any event, as we see it, under the state of the record, the question of the good faith of the bank was a question for the jury.

There was evidence in the case that usually the statement of the clearing house transactions was car-

ried from the bank to the trust company by its regular messenger at about 11:00 o'clock in the forenoon of each day. On this particular occasion, the demand for cash and cash items was made by the cashier of the bank in person, at the unusual hour of 2:30 p. m., after he had been in conference with other bankers regarding the affairs of the trust company, and no doubt well knew that it was insolvent or in imminent danger of insolvency. Moreover, the conditions under which this check was received for deposit by the trust company, as shown by the printed notice in the pass book which we have already quoted, was a condition common to all banks, and of course known to the cashier of the appellant bank. Still further, it appears that the cashier of the appellant bank collected and received an amount considerably in excess of what was then owing to it by the trust company, and the jury were privileged to believe that this excess was demanded and received for the purpose of indemnifying the bank against other items of the trust company which might thereafter be dishonored. We think there was sufficient evidence in the case to go to the jury upon the question of bad faith, under Rem. Comp. Stat., § 3447 [P. C. § 4127], and moreover the evidence was such that we cannot say the jury was not justified in finding that the transfer of the check from the trust company to the bank was but a delivery for collection in any event, and that would not constitute the bank an innocent holder.

The cases of *Beehive Marketeria v. Citizens Bank of Georgetown,* 126 Wash. 526, 218 Pac. 237, and *Washington Shoe Mfg. Co. v. Duke,* 126 Wash. 510, 218 Pac. 232, upon which appellant seems to place reliance, cannot aid it here. Under the testimony in this case, we cannot say, as a matter of law, that the officers of

the trust company were justified in indulging such a · hope or expectation of assistance as to warrant their acceptance of the deposit.

The judgment appealed from is affirmed.

MAIN, C. J., HOLCOMB, and PARKER, JJ., concur.